UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

STERLING SAVINGS BANK, a
Washington stock savings bank,

    Plaintiff,

    v.

BELLA PONTE CINO, LLC, an Oregon
limited liability company; BELLA PONTE
CINO HOMEOWNERS ASSOCIATION,
a not-for-profit Oregon corporation;
ROBERT L. BOCCI; MARILYN BOCCI;
SUNTREE LAND LLC, an Oregon limited
liability company; and SUNTREE INC., an
Oregon corporation,

    Defendants.

Civil No. 09-758-HA (Lead case)
Civil No. 09-773-HA

OPINION AND ORDER

HAGGERTY, District Judge:

    Plaintiff filed two consolidated actions seeking to recover amounts due under promissory notes signed or guaranteed by defendants. Defendants counterclaimed for rescission of the guaranties, and allege that plaintiff breached its covenant of good faith and fair dealing. Plaintiff has filed Motions for Summary Judgment [40 & 44] in both cases seeking judgment on the notes, the guaranties, and defendants' counterclaims. Oral argument was deemed unnecessary for the

1 -- ORDER

resolution of these motions.  For the following reasons, plaintiff's Motions for Summary Judgment [40 & 44] are denied.

## BACKGROUND

The following facts are undisputed unless otherwise noted and are stated in the light most favorable to defendant, the non-moving party.

### 1.     Bella Ponte Action

Defendant Bella Ponte Cino, LLC (Bella Ponte) desired to develop a residential subdivision, and sought an acquisition and development loan from plaintiff.  On or about May 30, 2006, Bella Ponte executed and delivered a promissory note to plaintiff in the amount of $5,000,000 (BPC Note).  To secure the BPC Note, Bella Ponte executed and delivered to plaintiff a trust deed on real property in Clackamas County.  Defendants Robert Bocci and Marilyn Bocci (the Boccis) executed and delivered to plaintiff an "Unconditional Continuing Guaranty" regarding all sums owed by Bella Ponte.  Defendant Suntree Land, LLC (Suntree Land) also executed an identical guaranty for the BPC Note.

On January 21, 2008, plaintiff, Bella Ponte, the Boccis, and Suntree Land entered into a Loan Modification and Extension Agreement.  The parties executed a replacement promissory note that increased the principal loan amount to $5,800,000 (Second BPC Note), but maintained the same maturity date of May 1, 2008.  Plaintiff and all defendants executed a "Modification of Trust Deed, Assignment of Leases and Rents, Security Agreement, and Fixture Filing" (Trust Deed Modification) to give notice of the modification.

On April 30, 2008, plaintiff and Bella Ponte entered into a second Loan Modification Agreement extending the maturity date of the BPC Note, the Second BPC Note, and the Trust Deed Modification to November 1, 2008 (collectively, the Modification Documents).

2 -- ORDER

Bella Ponte failed to make payments when due under the loan documents and the Modification Documents. Plaintiff asserts that the total balance due is $6,154,530.80, including the accrued interest, fees, and late charges. The court entered a default order against defendant Bella Ponte Cino Homeowners Association on November 23, 2009. Plaintiff asserts that it has incurred $6,600 in expenses for a foreclosure guarantee report and continues to accrue attorney fees.

### 2. Elk Meadows Action

In 2001, the Columbia Trust acquired property in St. Helens, Oregon that it sold to defendant Elk Meadows, LLC (Elk Meadows) to develop into a residential subdivision. On or about November 30, 2006, Elk Meadows executed and delivered to plaintiff a promissory note in the amount of $10,000,000 (EM Note). Elk Meadows executed and delivered to plaintiff a trust deed for real property located in Columbia County as security for the EM Note. Pursuant to the EM Note, the Boccis and Suntree Land each executed and delivered guaranties to plaintiff regarding the payment of all sums owed by Elk Meadows.

Elk Meadows failed to pay sums due under the loan documents. Plaintiff asserts that the total balance due is $11,327,212.48, including the accrued interest, fees, and late charges. The court entered a default order against defendant John T. Pearson, as Trustee for the Columbia Trust, on November 9, 2009. Plaintiff asserts that it has incurred $9,578 in expenses for a foreclosure guarantee report and continues to accrue attorney fees.

Defendants dispute the amounts due and owing under the BPC Note and the EM Note. Defendants assert that the guaranties signed by the Boccis and Suntree Land are voidable based on material misrepresentation.

**DISCUSSION**

3 -- ORDER

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

On summary judgment, the court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). Once the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248-49.

### 1.   Promissory Notes

Under Oregon's statutory law, if the validity of a negotiable instrument is admitted or proved, the plaintiff producing the instrument is entitled to payment, unless the defendant provides a defense. O.R.S. § 73.0308. Defendants do not dispute the validity of their signatures on the BPC Note or the EM Note. Defs.' Resp. at 3. Defendants also do not dispute that Bella Ponte and Elk Meadows owe money to plaintiff under the notes, and that plaintiff is entitled to foreclose on the trust deeds securing the notes. *Id.*

However, defendants dispute the amounts owing under the notes. They allege that plaintiff's failure to deal in good faith prevented them from decreasing their debt. Defs.' Resp. at 4. As discussed below, defendants raise a genuine issue of material fact regarding whether

4 -- ORDER

plaintiff breached its duty of good faith and fair dealing under the guaranties. Therefore, because the amounts owed under the promissory notes are disputed, summary judgment is inappropriate. *See Patterson v. Kanna*, 867 P.2d 518, 519 (Or. Ct. App. 1994) (reversing summary judgment where the defendant disputed the amount due on the promissory note in his affidavit).

### 2.     Guaranties

Plaintiff also seeks to enforce the guaranties signed by the Boccis and Suntree Land. Defendants assert that the guaranties are void due to material misrepresentations by plaintiff's then-vice-president. Defendants support their assertion with several affidavits.

Plaintiff argues that defendants' affidavits rely on inadmissible evidence. Although plaintiff did not file a formal motion to strike, it made clear and specific objections to defendants' affidavits in its reply brief. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (holding that request to strike exhibit attached to party's declaration was properly preserved in its reply to summary judgment).

Declarations based on inadmissible evidence are not entitled to any weight in opposition to a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *see also Scosche Indus., Inc. v. Visor Gear Inc.*, 121 F.3d 675, 681 (9th Cir. 1997) (noting that affidavit based on hearsay and opinion did not satisfy Rule 56); *Taylor v. List*, 880 F.2d 1040, 1045 n.3 (9th Cir. 1989) (noting that affidavit lacking personal knowledge did not raise triable issue of fact). A party also cannot create an issue of fact by an affidavit contradicting his or her prior deposition testimony. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

After reviewing the affidavits submitted by the parties, and the challenges advanced to these affidavits, the court relies upon only admissible evidence presented in the affidavits. The

5 -- ORDER

court strikes the following references from defendants' declarations for lack of personal knowledge: (1) the first three sentences of paragraph six in Pearson's declaration; (2) any mention of David Dresser's discussions with plaintiff, Dresser's state of mind about the development projects, and Robert Bocci's state of mind in paragraphs three and four of Bret Bocci's declaration; (3) any mention of plaintiff's intent in offering the loan rebate in paragraph four of Robert Bocci's declaration; (4) any mention of Dresser's state of mind in paragraph six of Robert Bocci's declaration; (5) paragraph eleven of Robert Bocci's declaration; (6) any mention of Robert Melius in paragraph twelve of Robert Bocci's declaration; and (7) all but the first sentence of paragraph sixteen of Robert Bocci's declaration. Plaintiff's other objections to the affidavits are overruled.

Plaintiff also asserts that defendants' affidavits seek to admit evidence outside the written terms of the loan agreements, which violates Oregon's Statute of Frauds, O.R.S. § 41.580(h), and Oregon's Parol Evidence Rule, O.R.S. § 41.740. This court disagrees. Defendants seek to void the guaranties in their entirety because of plaintiff's alleged oral misrepresentations. Evidence of that prior agreement is admissible. The parol evidence rule does not bar admission of evidence regarding a prior promise that allegedly induced one party to enter the contract through fraudulent representations. *Claude v. Claude*, 174 P.2d 179, 188 (Or. 1946). Similarly, where one party alleges inducement to enter a contract by the other party's false representation, made with knowledge, and the intent to induce, then the statute of frauds cannot be used to bar evidence of the alleged misrepresentation. *Siegner v. Interstate Prod. Credit Ass'n of Spokane*, 820 P.2d 20, 30 (Or. Ct. App. 1991).

According to the affidavits, before Columbia Trust sold its acreage to Elk Meadows, Pearson, the Boccis, and two of plaintiff's representatives (senior vice-president Dresser and

6 -- ORDER

Kelly Francis) discussed development plans and whether plaintiff would finance the subdivision. Pearson Decl. at 3. According to Pearson, Dresser said that he "saw no reason why [plaintiff] would not approve the loan, but that the loan approval would be subject to an appraisal." *Id.* Dresser allegedly expressed plaintiff's full support for the development and stated that plaintiff would provide "construction loans to builders and permanent financing for home buyers." *Id.*

Robert Bocci testified at his deposition that Dresser gave assurances that Bocci would have buyers for the entire project. Sugawa-Fuginaga Decl., Ex. A, at 9. Bocci stated: "Dresser assured me that not only did [plaintiff] have more than enough pre-approved builders capable of purchasing the entire subdivision, but that if I brought other credit-worthy builders to [plaintiff], [plaintiff] would finance those builders and still honor the half-point rebate if those builders obtained construction financing through [plaintiff]." Robert Bocci Decl. at 3. Bocci declared that he "believed [Dresser's] representations and acted in reliance on them." *Id.*

Bret Bocci, the Boccis' son, stated that he also attended this meeting. Bret Bocci Decl. at 3. According to Bocci, Dresser stated without condition that plaintiff would provide speculative financing to one of the two builders that Pearson named at the meeting. *Id.* at 4.

Pearson stated that he would not have allowed plaintiff to take a first trust deed on the real property if plaintiff had "shown the slightest hesitation or reservation regarding [its] intent or capacity to fund the entire project." Pearson Decl. at 3-4.

Although not present at the meetings, Marilyn Bocci declared that she signed the personal guaranties because Dresser "assured my husband that [plaintiff] would fully support the two subdivisions to be developed by Bella Ponte and Elk Meadows with construction and permanent financing." Marilyn Bocci Decl. at 2. She "relied on Dresser" and "would not have signed the closing documents incurring these extreme debt loads and the personal guaranties if I

had any concern as to whether [plaintiff] would provide the financial support that it had promised." *Id.*

Based upon the evidence, a material issue of fact exists regarding whether plaintiff's representatives made material misrepresentations to the Boccis to induce them to sign the guaranties. Summary judgment is denied on the validity of the guaranties. *See Roberts v. Maze*, 985 P.2d 211, 217 (Or. Ct. App. 1999) (reversing summary judgment where defendants' evidence of a prior oral agreement raised an issue of material fact regarding whether defendants' promissory note was invalid); *Am. Nat'l Bank of Denver v. Tonkin*, 592 P.2d 1008, 1014 (Or. 1979) (reversing directed verdict for the bank where evidence existed that the bank misrepresented the period of the guaranty).

### 3. Defendants' Counterclaim for Rescission

Plaintiff moves for summary judgment on defendants' counterclaim for rescission based on defendants' inability to prove the existence of the alleged oral agreement and defendants' failure to provide notice of rescission. Defendants respond that notice was unnecessary because they did not intend a common law rescission claim. Defs.' Resp. at 11 & n.1. Instead, defendants seek to void the guaranty based on plaintiff's misrepresentations. *See* Restatement (Third) of Suretyship & Guaranty § 12 (1996).

According to the Restatement, a guaranty is voidable by the guarantor if his or her assent to the obligation is (1) induced, (2) by a fraudulent or material misrepresentation by the obligee, and (3) the guarantor's reliance on the misrepresentation was justified. Restatement (Third) of Suretyship & Guaranty § 12 cmt. a. (1996); *see Security Nat'l Bank v. Sloan*, 648 P.2d 861, 864 (Or. Ct. App. 1982) (recognizing that fraudulent misrepresentation can void a guaranty, but

8 -- ORDER

finding it inapplicable to the facts of that case because no oral or written representation was made by the bank to the guarantor).

Defendants provide sufficient evidence to raise a genuine issue of material fact regarding whether plaintiff's representatives made a fraudulent or material misrepresentation to the Boccis and Pearson, and whether the alleged misrepresentation induced them to sign the guaranties. Therefore, plaintiff's motion for summary judgment is denied.

### 4. Defendants' Counterclaim for Breach of Duty of Good Faith

Plaintiff also moves for summary judgment on defendants' counterclaim based on defendants' inability to prove the existence of the alleged oral agreement.

Oregon courts recognize that an obligation of good faith exists in the performance and enforcement of every contract. *Best v. U.S. Nat'l Bank of Or.*, 739 P.2d 554, 557 (Or. 1987). Good faith can be an abstract term, so Oregon courts use the doctrine of good faith to effectuate the reasonable contractual expectations of the parties. *Id.* at 558.  The court must examine the parties' objectively reasonable expectations under the contract in accordance with the contract's express terms. *Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 891 P.2d 639, 645 (Or. 1995). The doctrine of good faith cannot be used to contradict express contractual terms. *Id.*; *see also Tolbert v. First Nat'l Bank of Or.*, 823 P.2d 965, 969-71 (Or. 1991) (noting that the plaintiffs' expectations were irrelevant because they previously agreed, upon entering their contracts, that the bank could exercise its unilateral discretion to set the disputed fees).

The obligation to act in good faith does not bar a party from enforcing its legal rights under the contract. *U.S. Nat'l Bank of Or. v. Boge*, 814 P.2d 1082, 1092 (Or. 1991). However, if the contract provides for one party to exercise discretion, then the parties usually contemplate

that the discretion will be used in good faith for a particular purpose contemplated by the parties. *Best*, 739 P.2d at 558.

Thus, the court must determine whether defendants reasonably expected that plaintiff would provide financing to builders in accordance with its alleged representation. The terms of the guaranties never mention promises about providing financing to builders, and the guaranties disclaim the existence of any other agreements between the parties. Larvick Decl., Ex. 7, 8, 11, & 12. But if plaintiff's representatives orally represented plaintiff's intention to finance the pre-approved builders to facilitate the housing developments, then the Boccis reasonably expected that plaintiff would fulfill its intentions. At this time, defendants raise an issue of fact regarding whether plaintiff exercised its discretion in providing financing to potential builders in accordance with the parties' contemplated purposes. Moreover, the affidavits raise an issue of fact regarding the validity of the guaranties. Therefore, the claim for breach of the duty of good faith cannot be resolved as a matter of law.

## **CONCLUSION**

For the reasons provided, plaintiff's Motions for Summary Judgment [40 & 44] are denied.

IT IS SO ORDERED.

DATED this  2   day of November, 2010.

                                                  /s/ Ancer L. Haggerty
                                                    Ancer L. Haggerty
                                       United States District Judge